[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
October 26, 2005
THOMAS K. KAHN
CLERK

No. 04-15459

_____

D. C. Docket No. 02-00044-CV-MMP/AK

MIRIAM BARTES,

Plaintiff-Appellant,

versus

SCHOOL BOARD OF ALACHUA COUNTY,
JEFF CHARBONNET,
Individually and in his official capacity
as Principal of Howard Bishop Middle School,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

**(October 26, 2005)**

Before BLACK, WILSON and COX, Circuit Judges.

PER CURIAM:

Miriam Bartes appeals following the grant of summary judgment to

Defendants School Board of Alachua County (SBAC) and Jeff Charbonnet. Bartes was a teacher employed by SBAC from the Fall of 1996 through the Spring of 2000, on four annual contracts. Charbonnet was the principal at the school where Bartes worked for the last three of those four school years. After Charbonnet refused to offer Bartes a fifth annual contract or tenure in the form of a Permanent Services Contract (PSC), Bartes sued, alleging the following claims: discrimination on the basis of age, gender, national origin and disability; failure to accommodate her disability in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12112; failure to grant her appropriate leave under the Family Medical Leave Act (FMLA), 29 U.S.C. § 2612; and retaliation for both exercising her First Amendment rights by speaking about Charbonnet's discipline of a disturbed student and for complaining about SBAC's failure to accommodate her disability and other allegedly discriminatory actions through the filing of an Equal Employment Opportunity Commission (EEOC)/Florida Commission on Human Relations (FCHR) complaint. The district court granted summary judgment for the Defendants on all claims. (R.4-105.)

We review a grant of summary judgment de novo, viewing the record and drawing all reasonable inferences in the light most favorable to the non-moving party. *See Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1311 (11th Cir. 2002).

2

Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). A genuine factual dispute exists "if the jury could return a verdict for the non-moving party." *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc)). We may affirm the judgment of the district court on any ground that finds support in the record. *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1256 (11th Cir. 2001). After thorough review of the record and careful consideration of the parties' briefs, we affirm.

The complaint contains seven counts, each one incorporating by reference the 26 paragraphs of facts stated at the beginning of the complaint as well as the paragraphs in each preceding count. We have condemned these "shot gun" pleadings on numerous occasions because they make it "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief," *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Comm. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996), and "impede the orderly, efficient, and economic disposition of disputes." *Ebrahimi v. City of Huntsville Bd. of Educ.*, 114 F.3d 162, 165 (11th Cir. 1997).

The opposition to summary judgment employs the same mechanism, telling a rambling story (albeit in numbered paragraphs) about Bartes's teaching experience in Alachua County then giving short shrift to the legally relevant facts supporting the elements of her causes of action.

While Bartes's opening appellate brief recites the same facts in the same fashion, it limits the claims as to which she seeks appellate review to: (1) age discrimination in violation of the ADEA, 29 U.S.C. § 621 et seq., (2) violation of her right to equal protection, (3) retaliation for requesting accommodation pursuant to the ADA and filing an EEOC complaint, (4) retaliation for speech protected by the First Amendment, and (5) refusal to accommodate her disability as required by the ADA. On appeal, the gist of Bartes's argument is that there were nine English teaching positions available in Alachua County public schools during the summer of 2000;[1] but, because she was the object of discrimination and retaliation, she was not hired to fill any of those positions. Bartes also argues that Charbonnet retaliated against her for speaking out about a disruptive student by refusing to continue her employment at Howard Bishop Middle School. Finally, she maintains that SBAC refused, in the summer of 2000, to accommodate her

---

[1]Nowhere in any of the filings does Bartes identify (by means of a list or otherwise) all nine English teaching positions that she claims to have been denied unjustifiably. Only four positions are identified by school name.

disability, breast cancer that she was diagnosed with and treated for in 1997.

## AGE DISCRIMINATION & EQUAL PROTECTION

Focusing on nine English teaching positions that were filled in the summer of 2000, Bartes claims that the district court erred in its application of the third prong of the *McDonnell Douglas* test by finding that she had not put forth sufficient evidence that SBAC's reasons for hiring others instead of her were pretextual. However, contrary to Bartes's assertions, the district court did not find that a prima facie case existed as to Bartes's claims of discrimination based upon age, gender, national origin, or any other basis. Rather, the district court assumed, arguendo, the existence of the prima facie case and stated that, even if the prima facie case existed, summary judgment was still appropriate. (R.4–105 at 18.)

We affirm the district court's summary judgment as to these claims, but we decline to proceed beyond the first step in the *McDonnell Douglas* analysis because we conclude that Bartes made no prima facie showing of discrimination.

> In order to establish a prima facie case, and thus raise an inference of discriminatory intent, the plaintiff must demonstrate only that: (i) he or she belonged to a protected class; (ii) he or she was qualified for and applied for a position that the employer was seeking to fill; (iii) despite qualifications, he or she was rejected; and (iv) the position was filled with an individual outside the protected class.

*Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 768 (11th Cir. 2005) (citing

5

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824, 36 L. Ed. 2d 668 (1973)) (emphasis added); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142, 120 S. Ct. 2097, 2106, 147 L. Ed. 2d 105 (2000) (finding prima facie case where plaintiff showed that, after he was fired, defendant successively hired three persons in their thirties to fill his position).

Here, there is no prima facie case of discrimination because the record is devoid of any facts concerning the ages, races, genders or national origins of the applicants who were hired instead of Bartes. Bartes's filings, including the opposition to Defendants' motions for summary judgment and briefs filed in this court, contain many allegations that those hired were younger than Bartes but no evidence supports a finding that they were younger. (R.2-79a at 18.); Appellant's Opening Br. at 26. Neither are there any citations to facts revealing the successful applicants' genders, races, or nations of origin.[2] Appellant has not met the fourth prong of the prima facie showing. Thus, the district court was correct in finding no evidence of discrimination and granting summary judgment as to these claims. (R4-105 at 18.) These types of assertions, unsupported by factual citation, simply

---

[2] The filings do cite to the other applicants' job applications, but examination of those documents reveals that they do not contain any information regarding any applicant's date of birth, age, gender, race or national origin. (R.2-79a at 18.)

In addition, as recognized by the district court, Bartes's own deposition testimony is that she has no personal knowledge that hiring decisions were made on the basis of age, sex, or national origin. (R.4-105 at 18.); (R.2-79d at 150-61.)

do not meet the standard required to preclude summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

## RETALIATION FOR REQUESTING ACCOMMODATION & FILING EEOC COMPLAINT

Likewise, we affirm the district court's grant of summary judgment to Defendants as to Bartes's claim alleging retaliation for requesting accommodation for a disability and retaliation for filing a complaint of discrimination. Bartes argues that she was denied nine English teaching positions in retaliation for her request to SBAC for accommodation of her disability and for filing a complaint with the EEOC and FCHR. Appellant's Opening Br. at 18.

Bartes's opening appellate brief acknowledges that "neither defendants nor the district court considered whether Bartes had made out a prima facie case of retaliation." Appellant's Opening Brief at 25.[3] We consider the issue and conclude that she did not.

In order to establish a prima facie case of retaliation, "a plaintiff must show

---

[3]While it did not discuss all of the elements of a prima facie case of retaliation, the district court did find a total lack of evidence of retaliation. Referring to Bartes's testimony, the district court wrote, "She was asked several times if she had any evidence that supported her claim of retaliation and she freely admits throughout her deposition that she did not." (R.4-105 at 18.) Our review of the record yields the same conclusion. *See, e.g.*, R.2-79d at 150.

At oral argument, counsel for Bartes stated that Defendants had conceded that a prima facie case of retaliation had been made; but that assertion is belied by Defendants' continued reliance on the district court's finding that Bartes put forth no evidence of retaliation.

that (1) she engaged in statutorily protected conduct; (2) she suffered an adverse employment action; and (3) there is a causal connection between the protected conduct and the adverse employment action." *Brungart v. Bellsouth Telecomms., Inc.*, 231 F.3d 791, 798 (11th Cir. 2000). To create a genuine issue of material fact as to the causation element of the prima facie case, a plaintiff must show that the decision maker was aware of the protected conduct at the time of the adverse employment action. *Id.* at 799. "That requirement rests upon common sense. A decision maker cannot have been motivated to retaliate by something unknown to him." *Id.*

Bartes does not contend that SBAC made teacher hiring decisions. The undisputed facts in the record demonstrate that principals of individual schools made those decisions. (R.2-79h at EEOC93-105.) Given these facts, Bartes's failure to cite any evidence that the principals who chose applicants other than her were aware of either her request for accommodation of a disability or her EEOC complaint alleging discrimination is fatal to these retaliation claims.[4] Bartes has

---

[4]Indeed, there is evidence in the record to indicate that the hiring principals were unaware of Bartes's request for accommodation or EEOC complaint. First, the request for accommodation was made to SBAC, not to any particular principal, on August 11, 2000. Appellant's Opening Br. at 18; (R.2-79b at 2, ¶13.) Bartes's attorney also informed SBAC, not any principal, that she had filed a complaint with the EEOC. (R2-79b at 2, ¶13; R.2-79h). Furthermore, the record evidence, including a letter from Bartes's attorney to SBAC dated August 22, 2000 (the first day of school that year), is that these requests and complaints were made in mid- through late-August 2000; but Bartes had already interviewed for many teaching positions earlier in the summer and had not been hired. (R.2-79h.) This timing does not support

8

argued that, shortly after she submitted her EEOC complaint, she was denied "a litany" of teaching positions.  Even if this were true, *see* note 4 *infra*, it is insufficient to satisfy the causation element of the prima facie retaliation case. *Strickland v. Water Works & Sewer Bd.*, 239 F.3d 1199, 1208 n.10 (11th Cir. 2001) ("[C]lose proximity in time between the protected activity and the adverse employment decision does not, standing alone, establish the third element of a prima facie case. . . . [It] merely buttresses other evidence (direct or circumstantial) in the case indicating that the decision maker had notice of the protected activity.").  Thus, summary judgment on this claim was appropriate.

## RETALIATION FOR SPEECH

Bartes contends that Charbonnet refused to extend her employment relationship because she spoke out about a disruptive student, speech that she argues is protected by the First Amendment.  She seeks to recover under 42 U.S.C. § 1983.  The district court, applying our precedent, found that there was no more than a mere scintilla of evidence that Bartes's speech about the student played a substantial part in the decision not to keep her on as a teacher.  (R4-105 at 13-16.) We agree.  Therefore, the grant of summary judgment for both Defendants on this

an inference that the principals doing the interviewing and hiring knew of the request for accommodation or complaint to the EEOC/FCHR.

claim was appropriate.[5] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S. Ct. 2505, 2512, 91 L. Ed. 2d 202 (1986).

## REFUSAL TO ACCOMMODATE

Bartes contends that SBAC's failure to offer her a fifth annual contract or a PSC in 2000 constitutes a failure to provide reasonable accommodation to her disability as required by the ADA. Her claim of disability arises out of her diagnosis and treatment for breast cancer in the spring and summer of 1997. In 1997, at Bartes's request, SBAC waived a requirement that she complete six credit hours towards Spanish certification before being allowed to teach Spanish in the 1997-98 school year. Bartes required no other accommodation.

The district court found that SBAC and Charbonnet reasonably accommodated Bartes's disability by waiving the continuing education requirement in 1997 and by granting Bartes four years to receive her Spanish certification. (R.4-105 at 20). We agree that no reasonable jury could conclude that the Defendants' denial of a fifth annual contract or PSC, three years after Bartes's cancer treatment had concluded, constituted discrimination through a failure to provide reasonable accommodation.

AFFIRMED.

---

[5]We also note that, because there is no respondeat superior liability available under Section 1983, SBAC is not shown to be a proper defendant on this claim. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694, 98 S. Ct. 2018, 2037, 56 L. Ed. 2d 611 (1978).